UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

SYLVIA MINES,

                    Plaintiff,          11 CV 7886 (JGK)

       - against -              <u>MEMORANDUM OPINION
AND ORDER</u>

THE CITY OF NEW YORK/DHS,

                    Defendants.
_____

JOHN G. KOELTL, District Judge:

    The plaintiff, Sylvia Mines, brings this action against the defendants, the City of New York ("the City") and the New York City Department of Homeless Services ("the DHS"), her former employer.  The plaintiff, proceeding pro se, alleges employment discrimination on the basis of religion under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e <u>et seq.</u>, and on the basis of disability under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 <u>et seq.</u>  The defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1]  For the reasons explained below, the motion is **granted.**

_____

[1] By Order dated May 14, 2012, this Court dismissed the plaintiff's claims for discrimination on the basis of race and national origin in violation of Title VII and all claims under New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 <u>et seq.</u>  The current motion is directed at the remaining claims.

**I.**

The standard for granting summary judgment is well established.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship., 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's task at the summary judgment stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue finding, it does not extend to issue resolution."  Gallo, 22 F.3d at 1224.

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1123.  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the non-moving party must produce evidence in the record and

"may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases).

Where, as here, a pro se litigant is involved, although the same standards for dismissal apply, a court should give the pro se litigant special latitude in responding to a summary judgment motion. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (courts "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest'" (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994))).  In particular, the pro se party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment.  Local Civ. R. 56.2; see also McPherson, 174 F.3d at 281; Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620-21 (2d Cir. 1999).

In this case, in the "Statement to Pro-Se Litigant Opposing Summary Judgment" dated April 1, 2013, the defendants advised the plaintiff of the procedures for responding to the defendants' motion for summary judgment, including the requirement to submit evidence such as witness statements, or documents, countering the facts asserted by the defendants in their Rule 56.1 statement ("Defs.' Rule 56.1 Stmt").  The

defendants also provided the plaintiff with a copy of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1 instructing her to prepare a numbered paragraph response to each paragraph in the defendants' Rule 56.1 statement.  The plaintiff has failed to respond to the defendants' factual assertions despite receiving notice of the procedure for responding to a motion for summary judgment.

In a case where "the plaintiff has not responded to the defendant's factual assertions -- all of which are established by documentary evidence and/or the deposition testimony of plaintiff . . . this Court [] deem[s] those facts uncontroverted." Grant v. Pathmark Stores, Inc., No. 06 Civ 5755, 2009 WL 2263795, at *2 (S.D.N.Y. July 29, 2009) (internal quotation marks and citation omitted).  Nevertheless, "the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion." Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citing Giannullo v. City of N.Y., 322 F.3d 139, 143 n.5 (2d Cir. 2003) (stating that not verifying in the record the assertions in the Rule 56.1 statement "would derogate the truth-finding functions of the judicial process by substituting convenience for

facts")); see also Floyd v. Bailey, No. 10 Civ. 7794, 2013 WL
1155361, at *1 (S.D.N.Y. Mar. 21, 2013).

Here, the plaintiff's submission in response to the
defendants' Rule 56.1 statement is deficient.  The plaintiff
submitted only an "Opposition to Motion of Summary Judgment"
("Pl.'s Opp'n"), ignoring most of the defendants' record-based
factual assertions.  To the extent that the plaintiff addresses
the defendants' Rule 56.1 statement, she provides only
conclusory allegations that are not supported by evidence.
Therefore, for the purposes of this motion, the defendants'
allegedly undisputed facts that are supported by the record and
which the plaintiff has not specifically controverted with
admissible evidence are deemed admitted.


**II.**

In or around November 2009, the DHS determined that it
needed to hire Level I Fraud Investigators to fill current
vacancies for a shift that would work Friday through Sunday,
10:00 AM through 8:00 PM and on Monday from 10:00 AM to 7:00 PM.
(Defs.' Rule 56.1 Stmt. ¶¶ 11-12.)  The Department of Citywide
Administrative Services provided the DHS with the plaintiff's
name as a potential candidate for one of those positions.
(Khandakar Decl. Ex. E.)  The plaintiff is a female who
identifies herself as a member of the Apostolic Faith and who

claims that she suffers from a mental disability based on schizophrenia and that she also suffers from scoliosis back pain.  (Am. Compl. at 3; Khandakar Decl. Ex. R ("Pl.'s Dep."), at 67.)  The plaintiff attended an interview on December 7, 2009 and was ultimately selected for the Fraud Investigator position. (Khandakar Decl. Ex. E, at BB001; Pl.'s Dep. at 31.)  The plaintiff alleges that on the date she was hired she informed the DHS that she was "a little slow."  (Pl.'s Dep. at 74.)

On January 11, 2010 the plaintiff began a one year probationary period at the DHS as a Fraud Investigator Level I. (Defs.' Rule 56.1 Stmt. ¶ 5.)  The plaintiff received one week of field investigator training from January 11, 2010 to January 18, 2010 and two months of on-the-job training with senior fraud investigators from January 18, 2010 until March 7, 2010. (Defs.' Rule 56.1 Stmt. ¶¶ 16-17.)  The plaintiff claims that other employees received training from supervisors rather than senior fraud investigators.  (Pl.'s Dep. at 77.)

All of the plaintiff's training took place on a weekday schedule.  (Khandakar Decl. Ex. F.)  On March 2, 2010 the plaintiff received a memorandum reminding her that her Friday through Monday, 10:00 AM through 8:00 PM, schedule would commence March 7, 2010.  (Khandakar Decl. Ex. G.)

The plaintiff's position as a fraud investigator involved traveling with a partner to various addresses, interviewing the

occupants, observing the premises, and creating reports indicating whether or not applicants for homeless services could reside at the addresses.  (Defs.' Rule 56.1 Stmt. ¶¶ 8-10.) During the course of her employment, the plaintiff worked with two different partners, Oghenetega Eyubeh and David Liebowiz. (Pl.'s Dep. at 47-48.)

Despite being hired for a Friday through Monday position, on March 4, 2010, the plaintiff filed for a religious accommodation requesting Sundays off to attend church.  (Def.'s Rule 56.1 Stmt. ¶ 40; Khandakar Decl. Ex. P.)  Upon receipt of the plaintiff's request, the DHS's Executive Director for Diversity and Equal Opportunity Affairs, Mark Neal, engaged in several discussions with the DHS employees regarding possible accommodations.  (Neal Decl. ¶ 9.)  There were no vacancies for the plaintiff in the Monday through Friday shift and no volunteers willing to take over the plaintiff's Sunday shift. (Neal Decl. ¶ 11.)  As a probationary employee, the plaintiff lacked seniority and the DHS could not exchange her shift with a more senior employee without violating its collective bargaining agreement.  (Neal Decl. ¶ 11.)  Moreover, because the DHS requires fraud investigators to work in pairs, allowing the plaintiff to skip her Sunday shift would have resulted in extra costs associated with finding alternative work for her partner. (Neal Decl. ¶ 12.)

Therefore, on April 12, 2010, Mr. Neal met with the plaintiff and informed her that her request for accommodation was denied.  (Neal Decl. ¶ 14.)  During this meeting, the plaintiff informed Mr. Neal that she did "not like arguing and fussing" and requested a partner that would "only listen to religious music."  (Neal Decl. ¶ 14.)  The plaintiff also informed Mr. Neal that she had a mental health issue.  (Neal Decl. ¶ 15.)  Mr. Neal directed the plaintiff to submit medical documentation regarding her condition in order to assess an additional request for accommodation.  (Neal Decl. ¶¶ 15-16.) Mr. Neal contends that the plaintiff never followed up on this matter, while the plaintiff alleges she provided the required paperwork to his secretary.  (See Neal Decl. ¶ 17; Pl.'s Dep. at 72-73.)  The plaintiff concedes that she never followed up with Mr. Neal and never called asking about it again.  (Id. at 73.) Mr. Neal explains that he never denied or granted the plaintiff any disability accommodation because the plaintiff did not make an application for an accommodation or provide medical documentation regarding an accommodation.  (See Neal Decl. ¶ 18.)

On numerous occasions during her employment, the DHS reprimanded the plaintiff due to the quality of her work and her workplace behavior.  On March 27, 2010 and April 10, 2010, the DHS informed the plaintiff that her field investigations were

not accurate or complete.  (Khandakar Decl. Exs. I, J.)  On

March 26, 2010 and April 11, 2010, the plaintiff engaged in

verbal disputes with Ms. Eyubeh and the DHS informed the

plaintiff that her behavior was both unprofessional and against

the DHS Code of Conduct.  (Khandakar Decl. Exs. H, K.)  The

April 11, 2010 altercation took place at the scene of a field

investigation where Ms. Eyubeth referred to the plaintiff as

"crazy" and called a supervisor, Earnest Washington, to come to

the scene.  (Khandakar Decl. Ex. K ("Washington Mem.").)  After

his arrival, Mr. Washington observed the plaintiff acting

unprofessionally towards a tenant.  (Washington Mem.)  The

plaintiff informed Mr. Washington that she was "sick of being

told what to do" by her partner and had issues with the R&B

music that Ms. Eyubeh listened to. (Washington Mem.)  Mr.

Washington then proceeded to ask Ms. Eyubeh to work with the

plaintiff on this issue and to play the music less if possible.

(Washington Mem.)  Mr. Washington's record of this incident

notes that the plaintiff was "not ready for this type of

unsupervised work."  (Washington Mem.)

Soon after this incident, the plaintiff was assigned to a

new partner, Mr. Liebowiz.  (Defs.' Rule 56.1 Stmt. ¶ 27; Pl.'s

Dep. at 47.)  However, on May 23, 2010, a DHS employee

responsible for reviewing the plaintiff's field investigations

informed the plaintiff's supervisors that, despite the

plaintiff's having a new partner and despite numerous discussions regarding the quality of her work, the plaintiff continued to make numerous errors.  (Khandakar Decl. Ex. L.)  On May 24, 2010, the plaintiff attended a conference with her supervisor Shurba Pollard regarding her poor work quality. (Khandakar Decl. Ex. M.)  The purpose of the conference was to inform the plaintiff that her work performance was in direct violation of the DHS's Code of Conduct. (Khandakar Decl. Ex. M.) The plaintiff refused to sign the memorandum acknowledging the conference discussions.  (Defs.' Rule 56.1 Stmt. ¶ 34.)

The plaintiff's supervisor evaluated the plaintiff's performance on April 20, 2010 and rated her "unsatisfactory" in every category that was rated and "unsatisfactory" overall. (Khandakar Decl. Ex. N.)  The evaluation notes that the plaintiff was unable to conduct adequate field investigations due to a lack of focus, that she left out pertinent information from field reports, and that she displayed unprofessional behavior in the field.  (Khandakar Decl. Ex. N.)  The evaluation recommended that the plaintiff be terminated from her position. (Khandakar Decl. Ex. N.)  The Performance Evaluation was reviewed on May 25, 2010.  (Khandakar Decl. Ex. N.)  On or around June 20, 2010, the DHS terminated the plaintiff from her position.  (Khandakar Decl. Ex. O.)

On December 22, 2011, the plaintiff filed a Complaint in this Court alleging discrimination on the basis of religion, race, natural origin, and disability in violation of Title VII, the New York State Human Rights Law ("NYSHRL"), and the ADA, and failure to accommodate her religion and disabilities in violation of Title VII and the ADA.  By an order dated May 14, 2012, this Court dismissed the plaintiff's NYSHRL claims and her claims of discrimination on the basis of race and national origin. On June 14, 2013, the defendants filed the current motion for summary judgment with respect to all of the plaintiff's remaining claims.

### III.

The defendants move for summary judgment on all the claims alleged against the DHS, arguing that the DHS is not a proper party to this lawsuit because it is an agency of the City. Under the New York City Charter, "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency . . . ."  New York City Charter Ch. 17, § 396. Therefore, the DHS is not a suitable entity.  See Jenkins v. N.Y.C. Dep't of Homeless Servs., 643 F. Supp. 2d 507, 510 (S.D.N.Y. 2009), aff'd, 391 F. App'x 81 (2d Cir. 2010)(summary

11

order).  Accordingly, the defendants' motion for summary judgment on all the claims alleged against the DHS is **granted**.


**IV.**

The City moves for summary judgment on the plaintiff's Title VII claims for discrimination on the basis of religion. The plaintiff has brought claims for discrimination based on her termination allegedly because of her religion and for a failure to accommodate her religion.


**A.**

At the summary judgment stage, claims of discrimination under Title VII are analyzed using the burden-shifting test established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under this test, the plaintiff carries the initial burden of establishing a prima facie case of religious discrimination.  McDonnell Douglas, 411 U.S. at 802.  To meet this burden, the plaintiff must establish that (1) she belongs to a protected class; (2) she was qualified for the position that she held; (3) she was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an interference of discriminatory intent.  See McDonnell Douglas, 411 U.S. at 802; Feingold v. New

York, 366 F.3d 138, 152 (2d Cir. 2004); see also Grant, 2009 WL
2263795, at *5.

If the plaintiff can establish the elements of a prima
facie case, the burden of production shifts to the defendant to
put forth a "legitimate, nondiscriminatory reason" for the
employer's challenged action. McDonnell Douglas, 411 U.S. at
802; see also Feingold, 366 F.3d 138.  If the defendant can
satisfy this burden, then the presumption of discrimination is
"rebutted and drops from the case."  St. Mary's Honor Ctr. v.
Hicks, 509 U.S. 502, 507 (1993)(quoting Tex. Dept. of Cmty.
Affairs v. Burdine, 450 U.S. 248, 255 & n.10 (1981)), 691 F.3d
at 129.  Thereafter, the plaintiff has the opportunity to
demonstrate that the proffered reason was not the true reason
for the employment decision, and that the plaintiff's membership
in a protected class was.  Burdine, 450 U.S. at 254-56; Grant,
2009 WL 2263795, at *5.  The plaintiff must provide admissible
evidence that is "sufficient to permit a rational finder of fact
to infer that the defendant's employment decision was more
likely than not based in whole or in part on discrimination."
Feingold, 366 F.3d at 154.

### B.

In this case, the parties do not dispute that the plaintiff
has satisfied two of the elements of a prima facie case: the

City does not dispute that the plaintiff is a member of a
protected class or that she suffered an adverse employment
action.  However, the City asserts that the plaintiff has not
established the second and fourth elements of a prima facie case
for discrimination: that the plaintiff was qualified for the
position she held and that the circumstances surrounding her
termination give rise to an inference of discriminatory intent.

     With respect to the second element, the City argues that
the plaintiff was not qualified for her position because of her
unsatisfactory work performance. To establish qualification, the
plaintiff must only show that she "possess[ed] the basic skills
necessary for the performance of the job." Donnelly v.
Greenburgh Cent. Sch. Dist., 691 F.3d 134, 147 (2d Cir. 2012)
(quoting Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87,
92 (2d Cir. 2001)).  The Second Circuit Court of Appeals has
established that the only showing necessary to satisfy this
second element is "basic eligibility for the position at issue,
and not the greater showing that [s]he satisfies the employer."
Slattery, 248 F.3d at 92.  An employee should not be required,
as part of the prima facie case, to anticipate and disprove the
employer's proffer of a legitimate, non-discriminatory reason
for termination.  See Donnelly, 691 F.3d at 147.  In cases in
which termination is at issue, because "the employer has already
hired the employee, the inference of minimal qualification is

14

not difficult to draw." Slattery, 248 F.3d at 92. "It is unusual for a plaintiff to fail to meet this standard." Donnelly, 691 F.3d at 147.

The plaintiff has offered evidence sufficient to satisfy the qualification element of the McDonnell Douglas test. The DHS conducted an interview of the plaintiff based on a referral from the Department of Citywide Administrative Services and ultimately hired her for the fraud investigator position. (Kandakar Decl. Ex. E; Pl.'s Dep. at 31-32.) Therefore, the plaintiff has met the minimum burden of showing that she was qualified for the position. See Feingold, 366 F.3d at 152; see also Slattery, 248 F.3d at 92.

The City argues that the plaintiff cannot establish the fourth element--that her termination occurred under circumstances giving rise to an inference of discriminatory intent. Circumstances that may give rise to such an inference include: (1) "criticism of the plaintiff's performance in [discriminatory] terms"; (2) "invidious comments about others in the [plaintiff's] protected group"; (3) "the more favorable treatment of employees not in the protected group"; or (4) "the sequence of events leading to the plaintiff's discharge." Chambers, 43 F.3d at 37 (internal citations omitted); see also Ragin v. E. Ramapo Cent. Sch. Dist., 471 F. App'x 81, 82 (2d Cir. 2011)(summary order). The plaintiff must offer sufficient

admissible evidence to permit a rational fact finder to infer that the defendant acted with a discriminatory intent when it terminated the plaintiff.  See Chambers, 43 F.3d at 38.  A plaintiff's conclusory allegations of discrimination are not sufficient to prove discriminatory intent.  See Falso v. Rochester City Sch. Dist., 460 F. App'x 60, 61 (2d Cir. 2012)(summary order).

The plaintiff has produced no evidence that would raise an inference that her termination was the result of discrimination on the basis of her religion.  The plaintiff does not allege that any employee of the DHS used derogatory language or made invidious comments about her religion.  While the plaintiff speculates that the other probationary employees received better training, there is no evidence to support that speculation.  In any event, there is no basis to conclude that any differences in training were based on religion.

Furthermore, the plaintiff's termination itself did not occur under circumstances giving rise to an inference of discrimination.  The plaintiff was terminated only after there had been complaints about the plaintiff's performance and she had received an unsatisfactory performance evaluation.  The plaintiff had been unable to work with two separate partners.  Because the plaintiff cannot establish that her termination occurred under circumstances giving rise to an inference of

discriminatory intent, the plaintiff has failed to establish a prima facie case.

In addition, the City is entitled to summary judgment on this claim on the separate basis that there was a legitimate non-discriminatory reason for the plaintiff's termination, namely, her poor performance as a probationary employee.  The plaintiff's poor performance is documented in contemporaneous documents as well as her thoroughly unsatisfactory performance evaluation.  (See Kandakar Decl. Exs. H thru N.)  The City's evidence establishes a clear and specific reason for the plaintiff's termination that is unrelated to her religion.  See Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000).  While the plaintiff has had the opportunities to rebut the City's non-discriminatory reason for terminating her, the plaintiff has failed to rebut that reason.  Rather, all that the plaintiff has offered are her own conclusory allegations and her disagreements with her employer's decision to terminate her.  This is insufficient to rebut the City's showing of the plaintiff's poor performance as the reason for her termination.  See Ricks v. Conde Nast Publications, Inc., 6 F. App'x 74, 78 (2d Cir. 2001) (summary order).  No rational trier of fact could find that religion was a factor in the plaintiff's termination.  See Schnabel, 232 F.3d at 91; Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996).

Because the plaintiff has failed to establish a prima facie case of religious discrimination and has failed to rebut the City's legitimate non-discriminatory reason for her termination, the City's motion for summary judgment on the Title VII religious discrimination claim is **granted**.


### C.

The City also moves for summary judgment on the plaintiff's claim for discrimination based on the alleged failure to accommodate her religion under Title VII.  In order to make a successful claim for failure to accommodate under Title VII, a plaintiff must show that (1) she held a bona fide religious belief conflicting with an employment requirement; (2) she informed her employer of this belief; and (3) she was disciplined for failure to comply with the conflicting employment requirement.  Knight v. Conn. Dept. of Pub. Health., 275 F.3d 156, 167 (2d Cir. 2001).  If a plaintiff establishes a prima facie case, then the burden shifts to the employer to "show it could not accommodate the employee's religious beliefs without undue hardship."  Id.


### D.

The City does not dispute that the plaintiff held a bona fide religious belief conflicting with her Sunday work schedule

or that she informed her employer of this through her request for accommodation.  However, the defendants assert that the plaintiff cannot establish that she was disciplined for failing to comply with the requirement to work on Sundays.

In order to establish this element, the plaintiff must show that she was "threatened with discipline" or suffered some "adverse employment action" for failing to report to work on the days she requested to take off for religious accommodation.  See Siddiqi v. N.Y. City Health & Hosps. Corp., 572 F. Supp. 2d 353, 370 (S.D.N.Y. 2008).  A plaintiff does not establish this element if she decides to comply with the requirement to work on the days she had wished to take off or if the plaintiff uses leave to avoid working on those days, although a threat of disciplinary action may be sufficient to establish a prima facie case.  See id.  Moreover, if a plaintiff complies with the employment requirement, a "Court cannot infer that discipline would have resulted if the [p]laintiff had in fact not reported for work on the days [she] requested off."  Id.

The plaintiff has failed to provide any evidence that she was threatened with disciplinary action if she refused to show up for work on Sundays or if she used her annual leave in order to take off Sundays for religious reasons.  In fact, the plaintiff testified that she had both annual and sick leave available to her and that she had used both during the course of

19

her employment at the DHS.  (Pl.'s Dep. at 48-49.)  Moreover, the plaintiff continued to comply with the requirement to work Sundays after her request for religious accommodation was denied until her termination.  (Khandakar Decl. Ex. F.)  The Court cannot infer that the plaintiff would have suffered an adverse employment action had she not shown up for work on Sundays. Siddiqi, 572 F. Supp. 2d at 370.  Therefore, the plaintiff has failed to establish a prima facie case of failure to accommodate her religious beliefs under Title VII.

Moreover, the defendant has provided sufficient evidence to show that it could not reasonably accommodate the plaintiff's claim without undue hardship.  An accommodation causes an undue hardship when it results in "more than a de minimis cost to the employer."  Baker v. The Home Depot, 445 F.3d 541, 548 (2d Cir. 2006) (internal quotation marks and citation omitted).  An inability to obtain coverage is a legitimate and non-discriminatory reason for denying an employee's request for time off for a religious accommodation.  See Siddiqi, 572 F. Supp. 2d at 371.  Furthermore, "employers are not required to breach an agreed-upon seniority system to accommodate the religious needs to employees."  Cosme v. Henderson, 287 F.3d 152, 161 (2d Cir. 2002).  In fact, it is well established "that the neutral operation of a . . . seniority system, even if it has 'some discriminatory consequences,' does not violate the proscription

20

against religious discrimination in employment." Id. at 160
(quoting Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 82
(1977)).

The City has provided unrefuted evidence that the DHS
engaged in significant efforts to accommodate the plaintiff's
request to have Sundays off. (Neal Decl. ¶ 9.) The plaintiff
does not dispute that there were no vacancies in the Monday
through Friday schedule and no volunteers currently working the
Monday through Friday shift were willing to take over her Sunday
shift. (Def.'s Rule 56.1 Stmt. ¶ 47.) Because the plaintiff
was only a probationary employee, the DHS could not re-assign
more senior employees to the Sunday shift without violating a
collective bargaining agreement already in place. (Def.'s Rule
56.1 Stmt. ¶ 47.) Moreover, because the DHS requires Fraud
Investigators to work in pairs, allowing the plaintiff simply to
skip her Sunday shift would have resulted in extra costs
associated with finding alternative work for her partner.

In response, the plaintiff alleges that her eventual
reassignment to a new partner proves there would have been no
burden to accommodate her request. However, the fact that she
obtained a new partner for her shift does not suggest that Fraud
Investigators could work alone, and it does not suggest that any
more senior employees were prepared to take the plaintiff's
shift. Therefore, because the City has provided evidence

establishing an undue burden, the City's motion for summary judgment on the plaintiff's claim of discrimination based on an alleged failure to provide a reasonable religious accommodation under Title VII is **granted**.

## V.

The City moves for summary judgment on the plaintiff's claims for discrimination under the ADA.  The plaintiff has brought claims for discrimination due to her alleged termination on the basis of disability and for failure to accommodate. The plaintiff's claims under the ADA relate to her alleged scoliosis and schizophrenia.

## A.

ADA employment discrimination claims are subject to the same burden-shifting analysis in McDonnell Douglas.  See Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006).  To establish a prima facie case of discrimination under the ADA, the plaintiff must establish that (1) her employer is subject to the ADA, (2) she was disabled within the meaning of the ADA, (3) she was otherwise qualified to perform the essential functions of her job and (4) she suffered an adverse employment action because of her disability.  See id.; see also Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003).  Under the most

lenient standard, for a disability discrimination claim under

the ADA, a plaintiff must demonstrate that her disability was,

in the very least, "a motivating factor" for the adverse

employment action, if not a "but-for" cause for such an action.[2]

See Parker v. Columbia Pictures Indus., 204 F.3d 326, 336-37 (2d

Cir. 2000) (holding that "the mixed-motive analysis available in

the Title VII context applies equally to cases brought under the

ADA"); see also Perry v. NYSARC, Inc., 424 F. App'x 23, 25 (2d

Cir. 2011) (summary order); but see Serwatka v. Rockwell

Automation, Inc., 591 F.3d 957, 962 (7th Cir. 2010) (requiring

---

[2] The holding in Parker v. Columbia Pictures Indus., 204 F.3d 326, 336-37 (2d Cir. 2000), which allows the mixed-motive analysis under the ADA, has been called into doubt in light of the Supreme Court's decision in Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009). See Widomski v. State Univ. of New York at Orange, --- F. Supp. 2d. ---, No. 09 Civ. 7517, 2013 WL 1155439, at *10 n.9 (S.D.N.Y. Mar. 20, 2013). In Gross, the Supreme Court held that a plaintiff alleging age discrimination under the Age Discrimination in Employment Act (ADEA) must prove that "age was the 'but for' cause of the challenged employer decision." Id. at 177-78. Because the ADA and the ADEA contain parallel language prohibiting discrimination "because of" disability or age, several courts of appeals have extended the Gross holding to claims under the ADA and required a showing of "but-for" causation under the ADA. Lewis v. Humboldt Acquis. Corp., 681 F.3d 312, 321 (6th Cir. 2012); Serwatka v. Rockwell Automation, Inc., 591 F.3d 957, 962 (7th Cir. 2010); Palmquist v. Shinseki, 689 F.3d 66, 74 (1st Cir. 2012) (applying Gross to the Rehabilitation Act's retaliation provision, which explicitly incorporates the ADA's standard for liability). The Second Circuit Court of appeals has not explicitly addressed the effect of Gross on an ADA claim. Widomski, 2013 WL 1155439 at *10 n.9. Nevertheless, it is unnecessary to reach the issue in this case, because, as explained below, the plaintiff has failed to carry her burden of persuasion even under the more lenient mixed-motive analysis, and thus would certainly not satisfy the more demanding "but-for" standard. Id.

"but-for" causation for ADA claims); see generally Wesley-Dickson v. Warwick Valley Cent. Sch. Dist., --- F. Supp. 2d ---, No. 10 Civ. 2428, 2013 WL 5338516, at *13 n.10 (S.D.N.Y. Sept. 24, 2013) (discussing the differing causation standards).

## B.

Like the plaintiff's claim under Title VII, the parties do not dispute that the plaintiff has satisfied the first two elements of a prima facie case: the City is subject to the ADA and the plaintiff is disabled within the meaning of the ADA. However, the City asserts that the plaintiff has not established the third and fourth elements of a prima facie case: that she was otherwise qualified to perform the essential functions of her job and that she suffered an adverse employment action because of her disability.

With respect to the third element, the plaintiff has established that she was otherwise qualified to perform the essential functions of her job. A plaintiff is otherwise qualified if she is able to perform the essential functions of a job either "with or without reasonable accommodation." Shannon, 332 F.3d at 99-100. As with a Title VII claim, to prove "qualification," the plaintiff need only establish that she "possess[ed] the basic skills necessary for performance of [her] job." Sista, 445 F.3d at 171-72. As explained above, the

plaintiff was interviewed and hired for the position after being referred to the DHS.  (Kandakar Decl. Ex. E; Pl.'s Dep. at 31-32).  Therefore, the plaintiff has established that she was otherwise qualified for the position.  See Feingold, 366 F.3d at 152.

The City argues that the plaintiff is unable to establish a prima facie case of discrimination under the ADA because she has failed to show that she suffered an adverse employment action because of her disability.  In order to meet this burden a plaintiff must introduce sufficient evidence showing that she was terminated under circumstances giving rise to an inference of discriminatory intent.  Discriminatory intent may be "inferred from the totality of the circumstances, including . . . the historical background of the [termination] decision . . . , the specific sequence of events leading up to the challenged decision . . . ; [and] contemporary statements by members of the decision making body."  Reg'l Econ. Cmty. Action Program v. City of Middletown, 294 F.3d 35, 49 (2d Cir. 2002).  In establishing a prima facie case under the ADA, the plaintiff cannot rely solely on conclusory allegations of discrimination without any concrete evidence to support her claims.  See Cameron v. Cmty. Aid for Retarded Children, 335 F.3d 60, 63 (2d Cir. 2003).

The plaintiff has produced no evidence that would raise an inference that her termination was the result of discrimination. The plaintiff points to a single comment made about her mental capacity by her partner during an altercation.   However, the plaintiff provides no evidence that the comment by her partner had any effect upon the DHS's decision to terminate the plaintiff.  See Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 116 (2d Cir. 2007) ("[T]he relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decision-maker was motivated by assumptions or attitudes.").  The fact that her partner made an unkind remark about the plaintiff does not indicate anything about the intent of any decision made by the DHS.  Indeed, after the altercation, the plaintiff was provided with another partner.  The circumstances surrounding the plaintiff's termination do not lend any support to an allegation of discriminatory intent.  The plaintiff received warnings regarding unsatisfactory performance.  There are documented instances of inappropriate behavior, a conference regarding her poor work quality, and a performance evaluation rating the plaintiff as "unsatisfactory" in every category that was rated. (Khandakar Decl. Exs. H thru N.)  The plaintiff's deposition reveals that she only mentioned that she was "a little slow" during one in-house training session and later to Mr. Neal

during her meeting for a religious accommodation.  Not only does it appear from the record that the plaintiff never mentioned her scoliosis back pain to anyone, the plaintiff also admits that her direct supervisors were likely unaware that she suffered from any disability.  (Pl.'s Dep. at 74-75.)  Because the plaintiff cannot establish that her termination occurred under circumstances giving rise to an inference of discriminatory intent, the plaintiff cannot establish a prima facie case of discrimination under the ADA.

Moreover, the defendants have articulated a legitimate non-discriminatory reason for her termination, namely the plaintiff's poor work performance.  As explained above, this reason is well documented in the record, and the plaintiff has offered no evidence to rebut that reason and to suggest that she was terminated because of any disability.  No reasonable juror could find that disability discrimination was the reason for the plaintiff's termination.  See e.g. Wesley-Dickson, 2013 WL 5338516, at *15; Fitzpatrick v. New York Cornell Hosp., 00 CIV. 8594 LAP, 2003 WL 102853, at *8 (S.D.N.Y. Jan. 9, 2003);

Because the plaintiff has failed to establish a prima facie case of discrimination under the ADA and has failed to rebut the DHS's legitimate non-discriminatory reason for terminating the plaintiff, the City's motion for summary judgment on the claim for discrimination under the ADA is **granted**.

C.

The City moves for summary judgment on the plaintiff's claim for discrimination based on a failure to accommodate her disabilities under the ADA.  In order to make out a claim for failure to accommodate under the ADA, the plaintiff must establish that (1) she is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of her disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer refused to make such accommodations. McBride v. BIC Consumer Prods. Mfg. Co., 583 F. 3d 92, 97 (2d Cir. 2009) (internal quotation marks and citation omitted).

D.

The City does not dispute that it is subject to the ADA or that the plaintiff is disabled within the meaning of the ADA. However, the City asserts that the plaintiff has not established the third and fourth elements of a prima facie case for failure to accommodate because she has not shown an accommodation that would allow her to perform the essential functions of the job and that the DHS refused to make such an accommodation.

"It is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006).  In establishing a prima facie case, the plaintiff "bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [her] to meet the essential eligibility requirements of the service, program, or activity at issue." McElwee v. County of Orange, 700 F.3d 635, 642 (2d Cir. 2012).  The plaintiff must provide evidence that there was some form of accommodation that would have allowed her to continue working and that her employer refused to provide such an accommodation.  See McBride, 583 F.3d at 97.  If the plaintiff demonstrates that there is a possible accommodation, the defendant then bears the burden "of proving that the requested accommodation [was] not reasonable." McElwee, 700 F.3d at 642.

The plaintiff fails to provide any evidence of an accommodation that would have allowed her to perform the essential functions of her job despite her alleged disability. The plaintiff's deposition reveals that she was only seeking "protection" from any potentially adverse employment action and that she was "waiting to get approved" before making a specific accommodation request.  (Pl.'s Dep. at 66.)   There is no evidence that the plaintiff even requested any reasonable

accommodation for her scoliosis or her mental condition and that she was denied such an accommodation.

The plaintiff alleges that she informed Mr. Neal of her disability and that she gave medical documentation of her schizophrenia and back pain to his secretary to give to him. (Pl.'s Dep. at 72.)  On January 17, 2013, the plaintiff surreptitiously taped a telephone conversation with Ms. Berrios, Mr. Neal's secretary, which the plaintiff proffers as support for her statement that she delivered medical records to Mr. Neal in 2010.  Ms. Berrios initially said: "[W]hatever you gave me three years ago was given to him three years ago.  I don't understand what's the purpose of your call?"  (Rodriguez Decl. Ex. A, at 7.)  Ms. Berrios then stated that she did give it to him.  (Rodriguez Decl. Ex. A, at 8.)  Putting aside the surreptitious nature of the plaintiff's actions, the tape does not help the plaintiff's case.  The Court is required to accept the plaintiff's sworn deposition testimony that she gave medical records to Mr. Neal.  But the plaintiff has proffered no evidence that she asked for any reasonable accommodations for her alleged physical conditions,[3] that the accommodations she

---

[3] The only medical records submitted in connection with the current motion are two notes from the plaintiff's doctors. One note, dated October 4, 2006, indicated that the plaintiff was able to work although she had lower back pain.  She took Celebrex that did not interfere with her work.  A second note, dated December 18, 2009, indicated that the plaintiff was seen

sought were in fact reasonable, and that the City failed to make
those accommodations.  Indeed, even in response to the motion
for summary judgment, the plaintiff has failed to submit any
evidence of reasonable accommodations that the DHS should have
made for her and has proffered no evidence that she sought such
accommodations and that those accommodations were denied.  Mr.
Neal explained that the plaintiff never submitted an application
for a disability accommodation, (Neal Decl. ¶ 18), and there is
no evidence that she did so.  Therefore, the plaintiff has
failed to establish a prima facie case that the City violated
the ADA by failing to accommodate her disabilities.  See
McElwee, 700 F.3d at 642; McBride, 583 F.3d at 97.  Therefore,
the City's motion for summary judgment on this claim is **granted**.[4]

---

for a sprain of the lower back but had no restrictions and that
she could work without restrictions.  (Khandakar Decl. Ex. S.)
[4] After the motion for summary judgment was fully briefed and
argued, the plaintiff submitted a letter seeking discovery of
the visitor logs for the DHS between December 8, 2009 and April
12, 2010, and the records of when she was called for an
interview as a Fraud Investigator, and the list of the other
candidates who were called.  (Doc. No. 50.)  However, discovery
was closed on February 1, 2013, and the plaintiff has failed to
show why she did not seek any discovery she needed during the
discovery period.  She has also failed to show how this
additional discovery would change the results of the present
motion, and she has failed to show good cause to reopen
discovery.  See, e.g., Trebor Sportswear Co. v. The Limited
Stores, Inc., 865 F.2d 506, 511-12 (2d Cir. 1989) (affirming
denial of the request by the nonmoving party on a motion for
summary judgment to reopen discovery because the nonmoving party
had had "a fully adequate opportunity for discovery" and
"proffered no persuasive basis for the district court to
conclude that further discovery would yield proof" that would

**CONCLUSION**

The Court has considered all of the arguments raised by the parties.   To the extent not specifically addressed, the arguments are either moot or without merit.   For the reasons explained above, the defendants' motion for summary judgment is **granted.   The Clerk is directed to enter Judgment dismissing the Complaint.   The Clerk is also directed to close this case and to close all pending motions.**

**SO ORDERED.**

**Dated:      New York, New York**
             **November  1, 2013**          _____/s/_____
                                                **John G. Koeltl**
                                        **United States District Judge**

----

change the outcome of the case); <u>Bakalar v. Vavra</u>, 851 F. Supp. 2d 489, 494 (S.D.N.Y. 2011). The plaintiff's application for additional discovery is therefore **denied.**